IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.: 5:13CV61-RLV

| | |
|---|---|
| AGI ASSOCIATES, LLC,<br>    Plaintiff,<br><br>vs.<br><br>PROFILE AVIATION CENTER, INC.,<br>and the CITY OF HICKORY, NORTH<br>CAROLINA,<br>    Defendants. | )<br>)<br>)<br>)<br>)   **Memorandum and Order**<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court upon Defendant City of Hickory's "Motion to Dismiss Complaint," pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed March 8, 2013 along with a Memorandum in Support. (Docs. 8, 9.) Plaintiff filed its Response and accompanying Memorandum in Opposition on March 22, 2013. (Doc. 11.) Defendant amended its Memorandum in Support on March 27, 2013 (Doc. 12) and filed its reply to Plaintiff's Response in Opposition on March 28, 2013. (Doc. 13.)

### I. NATURE OF THE CASE

This civil case commenced on January 8, 2013 upon Plaintiff's filing of its complaint in this Court[1] pursuant to 28 U. S. C. § 1332. Jurisdiction is proper pursuant to § 1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000.00. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred, and the real property that is the subject of the action is located within the Western District – both Burke and Catawba Counties.

Plaintiff AGI Associates, LLC ("AGI") is a limited liability company organized and

---

[1] The case was originally filed in the Charlotte Division. Upon Defendant Hickory's Motion dated March 8, 2013 (Doc. 10), it was transferred to the Statesville Division as of April 11, 2013. (Doc. 14.)

existing under the laws of the State of Delaware. (Pl.'s Am. Compl. / Doc. 4 ¶ 1.)  Defendant Profile Aviation Center, Inc. ("Profile") is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located in North Carolina. (Pl.'s Am. Compl. ¶ 2.)  Defendant City of Hickory ("Hickory") is a municipal corporation organized and existing under the laws of the State of North Carolina. (Pl.'s Am. Compl. ¶ 3.)

Plaintiff's complaint arises out of an Airport Concessions Agreement ("ACA")[2] originally entered into by Profile and Hickory on or about March 4, 2003 by which Hickory granted to Profile a leasehold interest in the certain parcels of property at the Hickory Regional Airport ("Airport"), which Hickory owned. (Pl.'s Am. Compl. ¶¶ 7, 9.)  The ACA's purpose was to memorialize agreements and obligations between Profile and Hickory whereby Profile would provide commercial aviation services in Hickory in return for compensation. (Pl.'s Am. Compl. ¶ 7.)  On or about June 29, 2004, Profile executed and delivered to RBC Centura Bank (the "Bank") a Promissory Note in the amount of $2,000,000.00 which was to be due on June 29, 2009.  To secure the Note, Profile executed and delivered to the Bank Deeds of Trust in its leasehold interest in the Leased Premises and an Assignment of Rents[3] under which the Bank was empowered to collect Concession Revenues and deduct them from the monthly payments owed by Profile. (Def.'s Am. Mem. in Supp. at 4.)

Profile subsequently defaulted on its obligations to the Bank; Hickory claims that such a default also constituted a default under the Lease (Def.'s Am. Mem. in Supp., at 4.)  While the precise timing of Profile's default on its bank note is unknown, letters dated May 15, 2009 and April 21, 2011 demonstrate Hickory's understanding of Profile as being in default under the

---

[2] Also known as the Fixed Based Operations ("FBO") Agreement.

[3] As the airport itself sits in both Burke and Catawba Counties, Deeds of Trust and Assignments of Rents were entered separately in both the Burke and Catawba County Registries.

ACA Agreement as of those dates. (Notice of Default for Non-Payment of Rent / No. 5:11-bk-50642 Doc. 57-3 at 15, 17.) The record is unclear regarding whether Profile cured either of these defaults.

Subsequently, on or about April 29, 2010, Plaintiff purchased the Profile Promissory Note and Security Instruments from the Bank. (Pl.'s Am. Compl. ¶15; Def.'s Am. Mem. in Supp. at 4.) On May 19, 2011, Profile filed for reorganization under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Western District of North Carolina. (Pl.'s Am. Compl. ¶ 17; Def.'s Am. Mem. in Supp. at 5.) Via Consent Omnibus Order issued February 2, 2012, the bankruptcy court ruled, in relevant part:

> 2. Hickory is hereby placed in possession of the Hickory Regional Airport premises pursuant to the Airport Concession Agreement ("FBO Agreement") as of 12:01 a.m. on December 9, 2011, with reservation of rights to all Parties as to matters not specifically addressed by this Order.
> . . .
> 4. The FBO Agreement is deemed to have been rejected by the Debtor as of 12:01 a.m. on December 9, 2011.
> . . .
> 8. Hickory may co-mingle hanger [sic] rents with other general funds from December 9, 2011 at 12:01 a.m. forward; however, Hickory shall account for all hanger [sic] rents so received by payor, amount, and date. Hickory shall provide such accounting in writing to AGI and any other affected secured party on a monthly basis upon reasonable request to do so.
> . . .
> 9. Nothing in this order shall be deemed to constitute findings of fact, conclusions of law, or an adjudication of the Parties' rights with respect to any alleged termination of the FBO Agreement.

(No. 5:11-bk-50642 Consent Omnibus Order / Doc. 151 at 2-3.)

Profile's bankruptcy was dismissed by order dated February 23, 2012, which stated that Profile's quarterly fees were due pursuant to 28 U.S.C. § 1930(a)(6) and that "With the termination of the [ACA] Agreement, the Debtor is unable to reorganize." (No. 5:11-bk-50642 Order Granting Motion to Dismiss Bankruptcy / Doc. 152 at 4.) In a letter dated August 22,

2012, Plaintiff demanded from Hickory payment of rents beginning December 9, 2011; Hickory has refused to pay over such rents. (Pl.'s Am. Compl. ¶ 25.)

Against movant Defendant Hickory, Plaintiff brings causes of action for Judicial Foreclosure (Pl.'s Am. Compl. ¶ 36), Demand for Accounting (Id. ¶ 38), Disgorgement of Rents (Id. ¶ 42), and Unjust Enrichment (Id. ¶ 50). Plaintiff also brings a cause of action for Breach of Contract against defendant Profile.[4] (Id. ¶ 30.)

Defendant Hickory moves to dismiss each of these claims pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

Rule 12(b)(1) provides for dismissal where the court lacks subject matter jurisdiction over the lawsuit. Lack of subject matter jurisdiction may be raised at any time either by a litigant or the court. *See Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884). The Federal Rules of Civil Procedure anticipate this issue and provide that "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

When a court considers its subject matter jurisdiction, the burden of proof is on the plaintiff. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). In *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, the Court of Appeals for the Fourth Circuit held as follows:

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists.

---

[4] The Breach of Contract claim against Profile is not presently before the Court on the Motion to Dismiss.

> The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.

945 F.2d 765, 768-69 (4th Cir. 1991) (internal citations omitted). Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case. *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999).

Although the Court could conduct jurisdictional analysis, as it pertains to governmental immunity, under a Fed. R. Civ. P. 12(b)(2) standard as well[5], in this district and elsewhere, there is authority suggesting that motions to dismiss based upon governmental immunity may be properly granted pursuant to Rule 12(b)(1). *Johnson v. North Carolina*, No. 5:11cv57, 2012 WL 5024039, at *4 (W.D.N.C. October 17, 2012) (internal citations omitted).

**B. Rule 12(b)(6)**

Defendant Hickory moves to dismiss Plaintiff's Complaint pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Under this standard, "the court should accept as true all well-pleaded allegations and should view the complaint in the light most favorable to the plaintiff." *Marx Indus., Inc. v. Baseline Licensing Group, LLC*, 2011 U.S. Dist. LEXIS 81752, at *3 (W.D.N.C. July 26, 2011) (Voorhees, J.) (quoting *Mylan Labs, Inc. v. Matakari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In order to survive a Rule 12(b)(6) motion to dismiss, the facts alleged must be sufficient "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Requiring plausibility "does not impose a probability requirement at the

---

[5] *See Data Gen. Corp. v. Cnty. of Durham*, 545 S.E.2d 243 (N.C. Ct. App. 2001) (dismissing claims against county on personal jurisdiction grounds).

pleading stage." *Id.* at 556. It does, however, demand more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 662. Ultimately, a claim has facial plausibility when the plaintiff pleads factual content that permits the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

### III. DISCUSSON

**A. Governmental Immunity**

Defendant Hickory claims that the doctrine of governmental immunity insulates it from Plaintiff's various claims. As a general proposition, the state of North Carolina and its governmental subsidiaries are immune from tort liability when discharging a duty imposed for the public benefit in the absence of some statute subjecting them to liability or a waiver of the immunity. *See Town of Sandy Creek v. East Coast Contracting, Inc.* 741 S.E.2d 673, 675 (N.C. Ct. App. 2013). The analysis must thus focus on whether Hickory has waived its immunity.

1. **Contract Theory**

Hickory contends that it was not a party to any contract with either Plaintiff or the Bank and thus is immune from Plaintiff's various claims. (Def.'s Am. Mem. Supp. at 14.) In support, the City cites a recent North Carolina Court of Appeals decision upholding a trial court's determination that "[W]ithout an allegation of a valid contract, plaintiff did not demonstrate that defendant had waived its [governmental] immunity; and therefore, the trial court lacked jurisdiction over defendant." *M Series Rebuild, LLC v. Town of Mt. Pleasant, NC*, 730 S.E.2d 254, 257 (N.C. Ct. App. 2012). In response, Plaintiff alleges that Defendant Hickory "did contract to lease the premises, did contractually agree that Profile could encumber the leased premises, and did contractually agree on the manner in which it could assume possession of the leased premises free and clear of encumbrances." (Pl.'s Resp. in Opp'n at 14.)

Plaintiff's argument, however, either overlooks the fact that the ACA was entered into solely between Hickory and Profile, or assumes that the contract was *intended* to benefit Plaintiff. "The practice of allowing third-party beneficiaries not in privity of contract to bring an action in their own name to enforce the contract made for their benefit was recognized in North Carolina as early as 1842." *Vogel v. Reed Supply Co.*, 177 S.E.2d 273, 278 (N.C. 1970) (citation omitted). "[A] person may bring an action to enforce a contract to which he is not a party, if he demonstrates that the contracting parties intended primarily and directly to benefit him or the class of persons to which he belongs." *DeMent v. Nationwide Mut. Ins. Co.*, 544 S.E.2d 797, 801 (N.C. Ct. App. 2001).

Here, on its face, the "right of first cure" language of section 9.5 of the ACA would seem to contemplate, and place Hickory in privity with, third-parties such as Plaintiff or the Bank. (Pl.'s Am. Compl. ¶ 16.) That section of the agreement reads:

> City intends that it shall have the power to prevent the mortgagee or trustee or any other third party from stepping into the shoes of Profile under the Concession Agreement, or with respect to the Leased Property, in the event of a default under the terms of any such mortgage, deed of trust or other instrument securing the financial obligations of Profile by encumbrances on the Leased Property and Profile's interests in the Concession Agreement. Toward that end the City requires, and Profile agrees, that any and all debt instruments and the security interests encumbering Profile's interests as provided for in this Article 9 shall have provisions giving City notice of default and, in the event that Profile fails, is unable, or refuses to cure such defaults, the first right to cure such defaults. Upon the City's cure of any such defaults, Profile's interests in the Concession Agreement and the leased Property will be foreclosed in favor of the City and City shall retake possession of the Leased Premises free and clear of any interests of Profile or under the provisions of Concession Agreement.

(Pl.'s Am. Compl. / Doc. 4-2 at 8.)

However, section 9.5 was not part of the original March 4, 2003 Airport Concession Agreement. (Pl.'s Am. Compl. / Doc. 4-1.) Profile's Promissory Note to the Bank was dated June 29, 2004, section 9.5 first appeared in the Second Amendment to the ACA effective April 1,

2008.  Thus, with no contractual language indicating otherwise, the right to cure could not have applied to the June 29, 2004 transaction. (Def.'s Am. Mem. in Supp. at 7.)  Defendant Hickory has not waived its governmental immunity under a theory of contract.

   **2. Proprietary Function**

Plaintiff further argues that the City waived its governmental immunity by engaging in proprietary functions.  (Pl.'s Resp. in Opp'n to Mot. to Dismiss at 14.)  Governmental immunity does not apply when the municipality engages in a proprietary function.  *Estate of Williams ex. rel. Overton v. Pasquotank County Parks and Recreation Dept.*, 732 S.E.2d 137, 141 (N.C. 2012) (citing *Town of Grimesland v. City of Washington*, 66 S.E.2d 794, 798 (N.C. 1951)).  In distinguishing governmental functions from proprietary ones, the North Carolina Supreme Court has held that, "[G]enerally speaking, the distinction is this: If the undertaking of the municipality is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and 'private' when any corporation, individual, or group of individuals could do the same thing." *Bostic Packaging, Inc. v. City of Monroe*, 562 S.E.2d 75, 77 (N.C. Ct. App. 2002) (quoting *Britt v. City of Wilmington*, 73 S.E.2d 289, 293 (N.C. 1952)).

Citing various examples of county and municipality actions which have been held as proprietary, Plaintiff claims that Hickory was conducting proprietary functions when it leased real property, operated an airport, collected rents, and, upon foreclosure, "operat[ed] the leased premises just as [defendant] Profile had previously done." (Pl.'s Resp. in Opp'n to Mot. to Dismiss, at 15-16.) In response, Hickory relies on *Whitfield v. Gilchrist* which implies that the only way a municipal corporation implicitly waives governmental immunity is by expressly entering into a valid contract.  497 S.E.2d 412, 415 (N.C. 1998).  The *Whitfield* discussion, however, does not aid Hickory, as it comes clearly in the context of contract theory and aims to

distinguish instances where the sovereign executes express contracts from those involving claims of quasi or implied in law contracts.

As cited in Plaintiff's Response in Opposition, The North Carolina Supreme Court has deemed proprietary such functions as a municipality leasing an arena, *Aaser v. City of Charlotte*, 144 S.E.2d 610, 613 (N.C. 1965), or operating an airport, *Piedmont Aviation, Inc. v. Raleigh-Durham Airport Auth.*, 215 S.E.2d 552, 555 (N.C. 1975). Further, a town acts pursuant to a proprietary function by leasing property upon which a telecommunications tower will be constructed. *Stephenson v. Town of Garner*, 524 S.E.2d 608, 615 (N.C. Ct. App. 2000). Although contract theory analysis demonstrates that Plaintiff and the City were not placed in direct privity, the underlying municipal activity in the instant case does not significantly distinguish itself from such cases. As such, by leasing parcels of property at its municipal airport and collecting rents, Hickory has acted in a proprietary capacity and has waived its governmental immunity.

### 3. Liability Insurance

Pursuant to N.C. Gen. Stat. § 160A-485, a city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. Although section 24 of the ACA discusses liability insurance, there are no allegations as to whether the City purchased said insurance.[6] Additionally, having found that the City has waived its immunity by acting in a proprietary function, this Court needs not rule on the Motion on these grounds.

## B. Effect of Bankruptcy Order

The doctrine of res judicata applies in the bankruptcy context. *In Re Varat Enterprises, Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996) (citations omitted). Courts are to invoke res judicata

---

[6] Section 24.1 states: "The City and Operator agree that City shall have no obligation whatsoever to procure or pay for insurance of any kind on the Leased Premises but may, in its sole discretion and at its sole expense, procure such insurance for the benefit of the City if it desires.

principles in determining whether an earlier federal judgment, including the judgment of a bankruptcy court, bars a claim asserted in a later action. *Grausz v. Englander*, 321 F.3d 467, 472 (4th Cir. 2003) (citing *Keith v. Aldridge*, 900 F.2d 736, 739 (4th Cir. 1990)). Generally, claim preclusion occurs when three conditions are satisfied:

> 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

*In Re Varat*, 81 F.3d at 1315 (citing *Kenny v. Quigg*, 820 F.2d 665, 669 (4th Cir. 1987)).

Applying this analysis to the instant case makes clear that res judicata principles bar the claims seeking to essentially relitigate matters which the bankruptcy court adjudicated. First, the February 2, 2012 bankruptcy order was both final and on the merits. The order specifically states that "Appearances were made by counsel for the Debtor [Profile], the City of Hickory, . . . AGI, . . . (cumulatively, the "Parties")." (No. 5:11-bk-50642 Consent Omnibus Order / Doc. 151 at 2.) Although the order in question is not an Order Confirming Chapter 11 Plan of Reorganization, Fourth Circuit law is clear that a bankruptcy consent judgment is "for claim preclusion purposes, a final one on the merits." *Weiner v. Fort*, 197 F.App'x. 261, 264 (4th Cir. 2006) (quoting *Keith*, 900 F.2d at 740). Secondly, both AGI and Hickory were parties, in their same respective capacities, to the bankruptcy proceeding. Finally, the claims for accounting of rents and judicial foreclosure ultimately stem from the same series of transactions or occurrences, namely the process of Profile leasing property, encumbering it with security interests, defaulting on its obligations, and filing for bankruptcy, as were at issue in bankruptcy proceeding. As such, res judicata principles are applicable to claims in this proceeding to the extent that they were adjudicated in bankruptcy.

**C. Judicial Foreclosure and Demand for Accounting**

The substance of these claims was adjudicated during they bankruptcy proceeding; they are precluded and thus dismissed. The claim for judicial foreclosure cannot stand where the bankruptcy order unequivocally vests possessory interest of the airport property in the City of Hickory. Secondly, in demanding an accounting for all airport rents and profits Hickory received since December 9, 2012, Plaintiff claims a remedy to which it is already entitled by virture of the Consent Omnibus Order in bankruptcy, paragraph eight, referred to above.

**D. Disgorgement of Rents and Unjust Enrichment**

In as much as discovery may establish Plaintiff's entitlement to equitable relief by virtue of one or both of these claims, the Court will not dismiss them at this time. First, providing for ultimate disgorgement of some or all of the rents which the City has collected since December 9, 2011 would not prove inconsistent with the bankruptcy order and may constitute suitable equitable relief for AGI pending discovery on the appropriate time period to which this remedy would apply.

With regards to unjust enrichment, in order to establish such a claim:

> [A] party must have conferred a benefit on the other party. The benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. The benefit must not be gratuitous and it must be measurable.

*Health Management Associates, Inc. v. Yerby*, 715 S.E.2d 513, 519 (N.C. Ct. App. 2011) (quoting *Booe v. Shadrick*, 369 S.E.2d 554, 556 (N.C. 1988)). In *Booe*, the North Carolina Supreme Court further described the nature of unjust enrichment claims, stating:

> A claim of this type is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law. A quasi contract or a contract implied in law is not a contract. The claim is not based on a promise but is imposed by law to prevent an unjust enrichment

*Booe*, 369 S.E.2d at 556. Thus, to survive a motion to dismiss for its unjust enrichment claim, Plaintiff must establish a contract implied in law between it and Hickory. Whereas North Carolina law is clear that, absent an express contract between parties, courts will not imply a contract in law to the derogation of governmental immunity,[7] Hickory has waived its immunity by operating the airport proprietarily. At this stage of the litigation, the possibility for judicial implication of a contract between Plaintiff and the City remains.

## IV. ORDER

For all of these reasons, the Court finds that it has subject matter jurisdiction over the Plaintiff's various claims. Further, Plaintiff's claims for Disgorgement of Rents and Unjust Enrichment survive Rule 12(b)(6) scrutiny while Plaintiff's claims for Judicial Foreclosure and Accounting of Rents are <u>moot</u> and subject to dismissal. Plaintiff's Breach of Contract claim against Profile, which is not implicated by the instant Memorandum and Order, remains a viable claim as well.

**IT IS, THEREFORE ORDERED** that Defendants' Motion to Dismiss is hereby **GRANTED** in part and **DENIED** in part.

Signed: August 20, 2013

Richard L. Voorhees
United States District Judge

---

[7] *See Whitfield v. Gilchrist*, 497 S.E.2d 412 (N.C. 1998) (concluding that a contract implied in law is insufficient to constitute a waiver of sovereign immunity where private attorney who had assisted district attorney brought *quantum meruit* claim for attorney's fees); *Data Gen. Corp.*, 545 S.E.2d 243 (N.C. Ct. App. 2001) (finding no personal jurisdiction over county with respect to plaintiff's claims for breach of contract, *quantum meruit* and estoppel).